IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01233-NRN

In re:

LACY ASHTYN BALDWIN,

Protected Person.

---

**ORDER
DENYING MOTION TO REMAND (Dkt. #9)
and
GRANTING MOTION TO DISMISS (Dkt. #10)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court for all purposes upon the consent of the parties (Dkt. #15) and an Order of Reference entered by Chief Judge Philip A. Brimmer pursuant to 28 U.S.C. § 636(c). (Dkt. #17.) Before the Court are the U.S. Department of Health and Human Services' ("HHS") Motion to Dismiss (Dkt. #10), and Applicant Lacy Ashtyn Baldwin's ("Applicant") Motion for Remand. Both motions are fully briefed, and on August 23, 2021, the Court heard oral argument from the parties. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** that Applicant's Motion to Remand (Dkt. #9) is **DENIED** and HHS's Motion to Dismiss (Dkt. #10) is **GRANTED**.

## BACKGROUND

Applicant is a minor disabled child. Pursuant to a stipulation entered in a proceeding in the United States Court of Federal Claims, she receives payments from an annuity policy (approximately $140,000 per year) funded by HHS under the National

Childhood Vaccine Injury Act ("NCVIA").[1] Payments are made to Applicant through her mother, Tami Lenee Baldwin, as Conservator.

On March 29, 2021, Applicant filed in the district court for Mesa County, Colorado (the "State Court Action") an application pursuant to Colorado's Structured Settlement Protection Act, Colo. Rev. Stat. §§ 13-23-101 *et seq.* (the "Application"). (*See* Dkt. #5.) The Application sought an order transferring receipt of the annuity payments from Applicant's mother as Conservator to her mother as the Trustee of the Lacy Ashtyn Baldwin Disability Trust Dated February 28, 2017 and Amended on December 18, 2018 (the "Trust"). Applicant and her mother want the payments made directly to the Trust because under the current arrangement, where the Conservator receives the payments and then transfers them into the Trust, Applicant is disqualified from receiving Medicaid benefits because her income is deemed too high.

HHS removed the case to federal court on May 4, 2021. (Dkt. #1.) The subject motions (Dkt. ##9 & 10) followed a month later.

---

[1] The NCVIA provides as follows:

> In purchasing an annuity under subparagraph (A) or (B), the Secretary may purchase a guarantee for the annuity, may enter into agreements regarding the purchase price for and rate of return of the annuity, and may take such other actions as may be necessary to safeguard the financial interests of the United States regarding the annuity. Any payment received by the Secretary pursuant to the preceding sentence shall be paid to the Vaccine Injury Compensation Trust Fund established under section 9510 of Title 26, or to the appropriations account from which the funds were derived to purchase the annuity, whichever is appropriate.

42 U.S.C. § 300aa-15(f)(4)(C).

## ANALYSIS

HHS seeks dismissal of this case under Rule 12(b)(1) and, alternatively, Rule 12(b)(6). Applicant, conversely, argues that removal was inappropriate and requests that the case be remanded to state court.

HHS cites 28 U.S.C. § 1442(a)(1) as authority for removal. (Dkt. #1 at 1.) Section 1442(a)(1) provides for removal of a "civil action" to a United States District Court from a state court under the following circumstances:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, [is sued] in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The term "civil action" includes "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." 28 U.S.C. § 1442(d)(1). To qualify for removal, a federal agency must only raise a "colorable defense under federal law." *Mesa v. California*, 489 U.S. 121, 129 (1989).

The Seventh Circuit has summarized the requirements for removal under § 1442 as follows: "(1) the proceeding must be a 'civil action,' (2) the civil action must be 'against or directed to' the removing party, (3) the removing party must be one of the entities listed, (4) and the civil action must be 'for or relating to any act under color of such office.'" *Hammer v. United States Dep't of Health & Hum. Servs.*, 905 F.3d 517, 525–26 (7th Cir. 2018). The "basic purpose" of the "federal officer removal" statute "is to protect the Federal Government from [] interference with its operations . . . ." *Watson v. Philip Morris Co. Inc.*, 551 U.S. 142, 150 (2007) (internal quotations omitted). HHS, as

3

the party asserting federal officer removal, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). This burden is met by "a substantial factual showing," *Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006), that supports "'candid, specific and positive' allegations." *In re MTBE Prods. Liab. Litig.*, 488 F.3d 112, 130 (2d Cir. 2007) (citation omitted).But unlike other some removal statutes, § 1442 should "be liberally construed to give full effect to [its] purpose[ ]." *Colorado v. Symes*, 286 U.S. 510, 517 (1932).

Applicant concedes that HHS is a federal agency, and the Application she filed in the State Court Action meets the broad definition of a "civil action." Applicant argues, however, that the State Court Action is not directed to or against HHS, and HHS does not assert any colorable federal defenses to this action. The Court disagrees and finds that removal was proper.

First, Applicant's argument that the State Court Action is not "directed at" HHS because she does not seek an order directing HHS to act or refrain from acting, nor one modifying the terms of the parties' settlement agreement, is simply wrong. The stipulation pursuant to which the annuity payments are owed states that payments are to be made to Tami Baldwin, "as the court-appointed guardian(s)/conservator(s) of the estate of" Applicant. *See Baldwin v. Sec'y of Health & Hum. Servs.*, No. 09-694V, 2016 WL 6879548, at *2 (Fed. Cl. Oct. 20, 2016). It also commanded that "[n]o payments pursuant to this Stipulation shall be made until [Tami Baldwin] provides the Secretary with documentation establishing her appointment as guardian(s)/conservator(s) of [Applicant]'s estate." *Id.* Moreover, the annuity provides that HHS, as the owner of the annuity, has "the right at any time to designate the payee to whom benefits are payable

4

under the annuity." (Dkt. #1-2 at 2.) The Application, however, requests that HHS be "directed to remit the Assigned Payments to Tami Baldwin as Trustee of the [Trust]." (Dkt. #5 at 6, ¶ 35.) If the Application were to be granted by the state court, HHS would have to pay funds to a different legal entity than the one agreed to by the parties and approved by a federal court pursuant to a federal statute. The terms of the annuity payment would also be modified to remove HHS's discretion to designate the payee in the future. There is therefore no doubt the State Court Action is directed against HHS. *See Dugan v. Rank,* 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (internal citations and quotations omitted).

Second, HHS asserted a colorable federal defense in the Notice of Removal: sovereign immunity. (*See* Dkt. #1 at 4, ¶ 12 ("HHS seeks to assert a federal defense. The United States has not waived federal sovereign immunity to permit a state court action that would bind HHS in its handling of the annuity.").) In fact, this defense is not just colorable, it is dispositive—sovereign immunity divests the Court of subject matter jurisdiction over this case.

HHS raises the sovereign immunity defense by way of the doctrine of derivative jurisdiction. "Jurisdiction on removal is derivative in nature and does not exist if the state court from which the action is removed lacks jurisdiction." *Crow v. Wyo. Timber Prod. Co.*, 424 F.2d 93, 96 (10th Cir. 1970); *see also Jones v. Berryhill*, No. 19-cv-01305-REB, 2019 WL 2299854, at *1 (D. Colo. May 30, 2019) (recognizing that the doctrine of

5

derivative jurisdiction applies to removal under § 1442). In other words, if the Mesa County District Court does not have jurisdiction over Applicant's claims as they pertain to HHS, neither does this Court.

"[S]overeign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). "Sovereign immunity is jurisdictional in nature." *Id.* (citations omitted). Thus, unless the government waives its immunity by consenting to be sued, courts lack subject-matter jurisdiction to adjudicate claims asserted against it. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation omitted). The terms of the government's "consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Applicant has not identified a waiver of sovereign immunity such that HHS can be sued in state court to modify an order of a federal court and change the terms of an annuity funded by HHS pursuant to the NCVIA. Instead, she repeats her claim that the State Court Action is not directed at HHS. For the reasons discussed above, this argument is unpersuasive. And even if the Application only sought to direct Berkshire Hathaway, as the annuity issuer, to direct funds to the Trust, it is undisputable that the funds in question are federal funds. Only HHS—not its agent, Berkshire Hathaway—has the authority to decide to whom the funds should be paid. But, under the plain language of the Application, the order requested would "would require [HHS's] official affirmative

action, affect the public administration of government agencies and cause as well the disposition of property admittedly belonging to the United States." *State of Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). Such suits cannot be maintained. *See id.*

If Applicant wishes to modify the terms of her NCVIA settlement stipulation, the proper forum to do so is not in Colorado state court, but in the Court of Federal Claims, where the stipulation was reached, approved, and made an order of court.[2]

Applicant's Motion to Remand (Dkt. #9) is **DENIED**, and HHS's Motion to Dismiss (Dkt. #10) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**.

Dated this 10th day of September, 2021.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

---

[2] Because the Court does not have subject matter jurisdiction, it does not reach the issue of whether Applicant's requested relief is preempted by the NCVIA. That is an issue that can be addressed in the appropriate forum, the Court of Federal Claims.